UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOFFREY L. CLARK and EDGEWOOD PARTNERS INSURANCE CENTER, | § § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § | Civil Action No. 3:19-CV-00589-X |
| TRUIST BANK, *formerly known as* BRANCH BANKING & TRUST CO., | § § § § | |
| *Defendant,* | § § | |
| and | § § | |
| MCGRIFF INSURANCE SERVICES, INC., | § § § | |
| *Intervenor.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are motions for summary judgment from defendant Truist Bank, formerly known as Branch Banking & Trust Co. (BB&T) [Doc. No. 129] and intervenor McGriff Insurance Services, Inc. (McGriff) [Doc. No. 132]. Also pending is McGriff's objections to plaintiff Joffrey Clark's summary judgment evidence [Doc. No. 152]. For the reasons stated below, the Court **GRANTS** McGriff's motion to prevail on its claim that the non-compete with Clark is enforceable and that he breached it by servicing former customers. The Court also **GRANTS IN PART** McGriff's motion for summary judgment on Clark's claim for unpaid commissions covered by the January 19, 2016 and earlier acknowledgements. [Doc. No. 132]. Separately, BB&T's

1

motion for summary judgment claims it is the wrong party.  The Court agrees and **GRANTS** BB&T's motion.  [Doc. No. 129].

Finally, the Court construes McGriff's objection to some of Clark's declaration as a motion to strike.  [Doc. No. 152].  The Court **DISMISSES AS MOOT** the portion of the motion to strike regarding statements by a charter school client.  And the Court **GRANTS** the remainder of the motion to strike evidence regarding alleged discriminatory treatment.

## I.    Factual Background

Once upon a time, Clark worked as a commercial insurance broker for Regions Insurance, Inc. (Regions), specializing in insurance for charter schools.  In 2008, Clark and Regions signed a Producer Employment Agreement, establishing Clark's commission schedule.  The agreement included a covenant for Clark to not take, use, or disclose the company's confidential, trade secret, or proprietary information for two years following his employment.  And the agreement provided that for two years following the end of his employment, Clark would not solicit, accept, service, or assist in the solicitation or acceptance of any insurance business for any Regions customers for whom he had sold, serviced, managed, or consulted regarding insurance products in the preceding twelve months or solicit Regions employees to work for any other agent, broker, or insurer.  Regions later had Clark move from Little Rock, Arkansas to Dallas, Texas.

Clark signed annual acknowledgment forms beginning in 2011 that confirmed he had received all compensation he was owed.  In 2013, Regions provided Clark a

memorandum changing his maximum commission on renewal revenue to 30% (instead of 37.5%).   Clark refused to sign the memorandum. But Regions implemented the changes, and Clark signed annual acknowledgment forms as late as 2016 after the memorandum took effect.   Clark claims Regions had paid him less on account of his race.

In 2018, Branch Banking & Trust (BB&T) or one of its affiliated entities bought Regions and merged it into BB&T subsidiary McGriff.   Attempts to negotiate a new commission structure were unsuccessful.   On January 7, 2019, Clark resigned from McGriff and joined plaintiff Edgewood Partners Insurance Center (EPIC).   A BB&T attorney sent Clark a cease-and-desist letter on January 24, 2019, reminding him of his two-year non-compete.   Nine of Clark's customers moved their business to EPIC. Clark admits he serviced them but claims he did not solicit them.

Clark and EPIC sued BB&T in federal court in Pennsylvania, and that court transferred this case here.   The live claims against BB&T are for: (1) a declaratory judgment that the restrictive covenants are invalid; (2) an injunction prohibiting enforcement of the restrictive covenants; and (3) breach of contract on behalf of Clark.

McGriff's intervenor complaint also brings claims for: (1) breach of contract against Clark; (2) state and federal trade secret violations against Clark and EPIC; (3) tortious interference with existing contracts or prospective business relations against Clark and EPIC; and (4) conspiracy against Clark and EPIC.   Clark brought counterclaims against McGriff for owed commissions.

At summary judgment, McGriff contends that the non-compete is enforceable and that it wins as a matter of law on its breach claim against Clark. McGriff's motion also contends Clark's claim for unpaid commissions fails because of limitations, full payment, an amendment to his Producer Agreement, and waiver. BB&T argues that the plaintiffs sued the wrong corporate entity, and the injunctive relief request is now moot. And McGriff objected to certain evidence Clark submitted in response to the summary judgment motions.

## II.    Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party,[1] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A fact is material if it 'might affect the outcome of the suit,'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3] When a movant seeks summary judgment on its own claims, the movant must come forward with evidence that "would entitle it to a directed verdict if the evidence went uncontroverted at trial."[4]

---

[1] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412 (5th Cir. 2016).

[2] FED. R. CIV. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D.Colo. 1991)).

### III.   Analysis

The Court takes McGriff's motion for summary judgment first, then BB&T's

motion for summary judgment, and then McGriff's evidentiary objections.

### A.   McGriff Summary Judgment Motion

McGriff's summary judgment motion contends that it should prevail as a

matter of law that (1) the restrictive covenants in the enforceable, and (2) Clark

breached the restrictive covenants by accepting and servicing the stolen customers

for EPIC.  The motion also argues Clark's breach claim should fail because he is not

entitled to any further commissions.  The Court takes these arguments in turn.

#### 1.  *McGriff's Claim that the Covenants Are Enforceable and Were Breached*

##### a.  Enforceability

In McGriff's motion for summary judgment, its first argument is that the Court

should declare the restrictions on servicing clients enforceable.[5]  Clark responds that

McGriff failed to carry its burden of demonstrating that it holds a protectable interest

in the agreement and that the "non-acceptance" and "non-servicing" components of

the agreement are enforceable as a matter of law.

In the agreement, Clark made the following covenant:

[T]hat during employment and for a period of two (2) years following
termination of his employment, for any reason, he will not:

(a) either directly or indirectly, whether as an owner, shareholder,
promoter, employee, consultant, manager, solicitor, agent, broker,
claims agent or otherwise: (i) solicit, divert, accept, service or assist in
the solicitation or acceptance of, any insurance business from any

---

[5] This was the fifth basis of McGriff's cause of action against Clark for breach of the agreement.
Clark's dueling claim asks the Court to declare that any restriction on serving clients who move to
EPIC on their own accord and in the absence of solicitation is unenforceable.

> Customer, as the term Customer is defined in this Paragraph . . . . For purposes of this Agreement, a "Customer" is defined to include those organizations, individuals, groups, companies, or other entities for whom [Regions], at the time of termination is selling, servicing, managing or consulting regarding insurance products, or for whom [Regions] has sold, serviced, managed, or consulted regarding insurance products or insurance claims in the twelve-month period prior to termination of employment.[6]

And now to the law:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.[7]

The Texas Supreme Court's three-part test for reasonableness is (1) it must be ancillary to an otherwise valid transaction or relationship; (2) the scope is "not greater than necessary to protect the promisee's legitimate interest such as business goodwill, trade secrets, or other confidential or proprietary information"; and (3) the promisee's need for protection "must not be outweighed by either the hardship to the promisor or any injury likely to the public."[8] On the middle prong, the Texas Supreme Court has held that "[t]he fundamental legitimate business interest that may be protected by such covenants is in preventing employees or departing partners from using the business contacts and rapport established during the relationship of

---

[6] Doc. No. 35-1 at 5–6.

[7] TEX. BUS. & COM. CODE § 15.50(a).  Both sides point to Texas law for this case, and the Court sees no basis to disagree.

[8] *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386 (Tex. 1991); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681–82 (Tex. 1990).

representing the . . . firm to take the firm's customers with him."[9]  But this does not extend to prohibitions on serving "clients who were acquired after the partner left, or with whom the [employee] had no contact while associated with the firm."[10]  The enforceability of a covenant not to compete is a question of law for the courts.[11]

The two closest cases the parties cite on enforceability of these types of agreements (non-competes for salesmen) are in tension.  In *Gallagher v. Healthcare Insurance Services v. Vogelsang*, the First Court of Appeals examined a non-compete where the employee agreed that "for a period of two (2) years following the termination of his employment for any reason whatsoever, he will not divulge [the employer's] Confidential Information or make use of it for his own purpose or the purpose of another."[12]  At the summary judgment posture, the Court concluded that her restraint from serving eighty former clients for two years "does not impose a greater restraint that is necessary to protect [the former employer's] business interest."[13]

The plaintiffs cite to *Cardoni v. Prosperity Bank*, where the Southern District of Texas reformed a non-compete to only prohibit the former employee from actively

---

[9] *Haass*, 818 S.W.2d at 387.

[10] *Id*. at 388.  *Haass* involved accounting firms.  But the Fourteenth Court of Appeals acknowledged its logic applies equally to such occupations as sales.  *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App. 1996—Houston [14th Dist.] 1996, writ denied).

[11] *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644 (Tex. 1994), *abrogated on other grounds by Marsh USA Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2011).

[12] *Gallagher v. Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 644 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (cleaned up).

[13] *Id*. at 655.

soliciting clients and not from servicing former clients.[14]   But that Court cited no Texas authority for its holding.  And Texas courts like the First Court of Appeals in *Gallagher* have upheld prohibitions on soliciting or serving former clients for a limited time such as two years.[15]

The plaintiffs also cite to a stellar concurrence from former Justice Willett in *Marsh USA Inc. v. Cook*.[16]  There, then-Justice Willett noted that "Marsh speaks of safeguarding its goodwill, and that is a protectable interest.  But uttering the word goodwill is not enough; magic words do not boast auto-enforceability.  Marsh must demonstrate that it is not invoking goodwill to camouflage a less noble interest: escaping future competition from Cook."[17]  While this Court shares those sentiments, the Court in *Marsh USA* held that the Texas statute "provides that 'goodwill' is a protectable interest," and "Texas law has long recognized that goodwill, although intangible, is property and is an integral part of the business just as its physical assets are."[18]  The Court left for remand a determination of reasonableness of time, scope, and geography after having decided that goodwill was a protectible interest and stock options were valid consideration.[19]  This Court cannot take an *Eerie* guess that the Texas Supreme Court will about-face and hold goodwill is not protectable.

---

[14] *Cardoni v. Prosperity Bank*, No. H-14-1946, 2017 WL 1209906, at *7–9 (S.D. Tex. Mar. 31, 2017).

[15] *Gallagher*, 312 S.W.3d at 655.

[16] 354 S.W.3d at 780 (Willett, J., concurring).

[17] *Id*. at 782.

[18] *Id*. at 777 (citing Tex. Bus. & Com. Code § 15.50(a)).

[19] *Id*. at 766.

Neither can this Court hold McGriff to a higher standard than the Texas Supreme Court held the litigants to in *Marsh USA* as to what proof of goodwill is required.

On balance, the Court concludes here that Regions has a legitimate business interest in protecting its clients and business, and that a non-compete that prohibits Clark for two years from soliciting or servicing former customers whose accounts he worked on in his final year at Regions does not unduly restrict Clark to benefit Regions.[20]

### b.   Is McGriff the Proper Party?

The next question is whether McGriff can sue under the agreement originally between Regions and Clark.  Clark contends there is a fact dispute regarding whether McGriff is the legal successor or assignee to Clark's agreement with Regions.  McGriff responds that the evidence shows Regions was merged into McGriff, and Clark admitted he worked for McGriff multiple times in his deposition.  The Court agrees with McGriff.

The articles of merger indicated Regions Insurance Services, Inc. and Regions Insurance, Inc. were merged into McGriff.  Deposition testimony from BB&T witness Dale Davies confirmed this fact.  And Clark admitted multiple times in his deposition that he worked for McGriff before resigning.[21]

---

[20] Clark argues that he did not solicit (but only serviced) former clients and that the anti-service part of the agreement should be reformed.  He claims this argument is a defense to enforceability and warrants a trial.  But enforceability is a question of law for the Court.  Sure, McGriff might swing and miss on proving up elements of enforceability, which could warrant a trial.  But McGriff adequately proved up the elements for enforceability.  So there is no need for a trial on a question of law with an adequately developed record.

[21] Clark testified as follows:

Clark contends a fact issue exists because the articles of merger do not reference BB&T Insurance Holdings, the intermediary entity that BB&T's lawyers asserted initially bought Regions's stock. This is a curious assertion. It is true that the articles of merger do not specify BB&T Insurance Holdings or any other intermediary through which the Regions stock passed through. But Clark has not shown a legal obligation for the articles of merger to do so. And the articles of merger specify who the successor to Regions is: McGriff. The Court disagrees that Clark's question amounts to a fact dispute (especially when he admitted the fact to place it beyond dispute).

Likewise, Clark argues he received the following BB&T employment materials that never referenced McGriff: (1) the BB&T 2018 Excellence Associate Handbook, which welcomed employees to BB&T; (2) BB&T Policies and Procedures; (3) BB&T Career Development & Associate Support; and (4) BB&T Information Security

---

Q: . . . So you're with Regions in Little Rock from May of 2007 until July of 2018. Is that right?

A: That's correct.

Q: And, then, in July 2018, you began to work for McGriff Insurance Services?

A: We were -- yes, we were sold to McGriff.

. . . .

Q: . . . So you're at Regions from May of 2007 till July of 2018. Then you're at McGriff Insurance Services from July 2018 until January 7, 2019, and then you become employed by Epic, your current employer?

A: That's correct.

. . . .

Q: . . . And you were a producer for Regions Insurance and McGriff Insurance Services, correct?

A: Yes, yes.

Doc. No. 134-1 at 5.

Acceptable Use Standards.  And Clark argues that McGriff contended the change in Clark's renewal commission percentage required BB&T's approval.  Finally, Clark argues he was offered a proposed incentive plan between BB&T and himself to modify his agreement with Regions.  But long after each of these facts occurred and Clark left for EPIC, Clark admitted multiple times in his deposition that he had worked for McGriff.  The Court holds Clark to his admissions that he worked for McGriff.[22]

c.  Is McGriff's Interest Protectable?

Clark next argues that (1) Regions' discriminatory treatment of Clark gives it unclean hands, and (2) McGriff has no protectable interest as to customers that voluntarily left.  McGriff responds that (1) any discrimination arguments are barred by Clark's acknowledgements that he was paid all that was due and Clark's failure to bring a discrimination claim, and (2) Texas law, as *Gallagher* demonstrates, does not require any further showing by McGriff on goodwill.  The Court agrees with McGriff.

First, the Court does not believe that Clark's unclean hands defense for Regions's alleged discriminatory treatment of Clark is a legally proper method of raising an unpreserved discrimination claim.  Clark cites to no caselaw where a defendant who failed to obtain a right-to-sue letter from the Equal Employment

---

[22] Clark also contends McGriff is downplaying its relationship with affiliate McGriff, Siebels & Williams.  But this argument also cannot overcome Clark's repeated, sworn admissions that he worked for McGriff.

Opportunity Commission may repackage a discrimination claim they never perfected into an unclean hands defense.[23]

As to Clark's argument that McGriff has no protectible interest in customers who voluntarily left, this is a rehash of Clark's prior argument that the non-compete is enforceable only as to solicitation but not servicing.[24]  While courts applying Texas law to non-competes in the sales arena have narrowed down general non-competes to only prevent the employees from soliciting or servicing former customers for a limited time, the courts have not taken the additional step Clark advocates here (further narrowing the non-competes to only bar solicitation and not servicing).[25]  This Court lacks any indication that would enable it to make the *Eerie* guess that Texas courts will so narrow non-competes.  In short, McGriff made its case that the non-compete between Regions and Clark is enforceable and that McGriff may enforce it.

### d.  Did Clark Breach?

Having determined that the agreement is enforceable and that McGriff may enforce it, the final inquiry on this claim is whether Clark breached the agreement. McGriff says Clark's breach is admitted and therefore undisputed because he serviced nine former customers at EPIC.  Clark's only defense is that the nine former customers left of their own volition and without any solicitation.  The Court agrees

---

[23] According to McGriff, Clark filed a charge of discrimination against BB&T Insurance Holdings, Inc. after filing this suit, but he has not pointed to a right-to-sue letter for BB&T or McGriff in the summary judgment record.

[24] Clark also packages this argument in the form that barring servicing where there is no solicitation is against public policy.  This Court disagrees for the reasons expressed above.

[25] *See Haass*, 818 S.W.2d at 386; *Gallagher*, 312 S.W.3d at 644.

with McGriff.  Clark has admitted to servicing but not soliciting the nine former customers.  But because his agreement prohibits servicing, and the Court has upheld the agreement as enforceable under Texas law, Clark has admitted to breaching the agreement.  McGriff is entitled to summary judgment on its claim that the agreement is enforceable and that Clark breached it.

### 2.  *Clark's Claim on Commissions*

McGriff also moved for summary judgment on Clark's claim that McGriff owes him unpaid commissions.  McGriff claims: (1) unpaid commissions before May 6, 2016, are barred by limitations; (2) Clark acknowledged full payment from 2012 to 2016; (3) the parties amended Clark's commission to 30% for renewal premiums; and (4) Clark waived the "written modification" requirement in the agreement, or waived his 37.5% commission on renewals.  Clark disagrees with all of that.  The Court agrees with McGriff on the limitations argument and does not reach the remaining arguments.

Regarding limitations, McGriff argues that some of Clark's claims for unpaid commissions are beyond the four-year limitations period.  Clark claims Texas law holds that his claim accrues when he knew or should have known of the claim, and he had no way of verifying the Regions payments were accurate.

The determination of whether the discovery rule applies to a particular cause of action is a question of law.[26]  The discovery rule only applies if "the nature of the

---

[26] *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008) (*citing Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)).

injury is inherently undiscoverable."[27]   Here, Regions disclosed the commission percentage rates it used in the acknowledgements Clark signed.  True, Clark testified at his deposition that he "had no way of proving that they were wrong."[28]  But Clark admitted in his depositions to signing the acknowledgements,[29] and those acknowledgements contain the very information Clark claims he had no access to. Because Clark signed the information he claims to not have had access to, the Court concludes the information was not inherently undiscoverable.[30]  Accordingly, Texas's four-year statute of limitations on contract claims bars Clark's claims for commissions covered by the January 19, 2016 and earlier acknowledgments.[31]

---

[27] *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65–66 (Tex. 2011) (cleaned up).

[28] Doc. No. 142 at 20.

[29] Clark testified:

> Q: . . . [Y]ou signed [the acknowledgements], didn't you? Yes?
>
> A: I signed--every year after the numbers were presented to me, I signed accepting my commissions.

*Id.*

[30] Clark also claims the discriminatory environment in which he worked led him to believe it would have been detrimental to his employment to request his renewal commission percentage.  But he already had that information in his acknowledgments.  Because these particular claims are time-barred, the Court need not also address McGriff's alternative arguments (whether the acknowledgments bar the claims, whether the parties amended the agreement, and whether Clark waived these claims).

[31] The Court is using a different date than what McGriff suggested (May 16, 2016).  McGriff contends not only that Clark's acknowledgements had his commission percentage but also that he had access to his dashboard that provided sufficient information to calculate his percentages.  But McGriff never points to the place in the summary judgment record proving that fact.  And Clark's excerpts from his own deposition do not enable the Court to say at this juncture that they gave Clark sufficient notice to cause his claim to accrue.  *See* Doc. No. 142 at App. 0015 (Clark testifying that the dashboard gives rounded numbers that are not up to the minute).  The Court will make a determination at the end of trial whether Clark had sufficient information via the dashboard that his claims after January 19, 2016, are barred.  As is, the last acknowledgment (that had his percentage renewal commission) he signed outside the limitations window is dated January 19, 2016.

### B.     BB&T's Summary Judgment Motion

BB&T's summary judgment motion generally argues it is not a proper party and any request for injunctive relief is now moot.  Clark responded that because BB&T is not seeking to enforce the Producer Agreement against Clark, "there is no longer any controversy between him and BB&T as to the enforceability of the 'non-acceptance' and [']non-servicing' provisions of the Producer Agreement and that Clark's declaratory judgment claim against BB&T is now moot."[32]  Clark also agrees the claim for injunctive relief is now moot.  Additionally, the Court addressed above Clark's repeated admissions at his deposition that he was employed by McGriff.  Given the Court's holding on Clark's admission, and given that BB&T does not seek to enforce any contractual provision against Clark, the Court concludes there is no longer a controversy between Clark and BB&T.  As such, the Court **GRANTS** BB&T's motion for summary judgment and dismisses the claims against BB&T.

### C.     Motion to Strike

The only remaining pending motion is McGriff's objection to Clark's summary judgment evidence.  The Court construes the objection as a motion to strike.  The first bucket of Clark's evidence McGriff objects to is that Clark's declaration states what a former Regions customer (Gateway Charter Academy) who followed Clark to EPIC told him.  McGriff objects to these statements as hearsay.  But these statements go to Clark's argument that non-competes can only ban solicitation, not servicing.  Given that Clark admitted to serving this and eight other former customers (and that Texas

---

[32] Doc. No. 141 at 17.

courts uphold non-competes that ban servicing former customers), the Court did not rely on this disputed evidence in ruling on the summary judgment motions. The Court therefore dismisses as moot this motion to strike the statements purportedly from Gateway Charter Academy.

The next bucket of objected to evidence is statements in Clark's declaration regarding mistreatment at the hands of Regions. McGriff argues that even if these facts are true, they are irrelevant and hearsay. Clark responds that the discriminatory treatment is relevant to his claims and defenses, aren't hearsay, and fall under the residual hearsay exception.[33] The Court agrees with McGriff that Regions's alleged discriminatory treatment is irrelevant to the motions for summary judgment. At most, they go to Clark's unclean hands defense, but the Court is unconvinced that Clark can repackage a discrimination claim he did not perfect as an unclean hands defense to a live claim. Accordingly, the Court grants McGriff's motion to strike the portions of Clark's declaration alleging discriminatory treatment.[34]

## IV.   Conclusion

For the above reasons, the Court **GRANTS** McGriff's motion to prevail on its claim that the non-compete with Clark is enforceable and that he breached it by servicing former customers. The Court also **GRANTS IN PART** McGriff's motion

---

[33] Clark also argues McGriff should have filed his objections as a motion to strike and conferred with Clark before filing that motion. While the Court agrees that is the best practice, this Court routinely construes objections as motions to strike instead of having movants cure these minor defects and start the process all over. The Court does so again here.

[34] The Court need not reach McGriff's separate arguments to strike these discriminatory statements.

for summary judgment on Clark's claim for unpaid commissions covered by the January 19, 2016 and earlier acknowledgements.  And the Court **GRANTS** BB&T's motion for summary judgment.

Finally, the Court construes McGriff's objection to some of Clark's declaration as a motion to strike, **DISMISSES AS MOOT** the portion of the motion to strike regarding statements by a charter school client, and **GRANTS** the remainder of the motion to strike evidence regarding alleged discriminatory treatment.

Because a portion of Clark's unpaid commission claim and the other live claims not at issue in these motions will go to trial, the Court needs to enter an amended scheduling order with a trial date and pretrial deadlines.  The Court orders the parties to meet and confer in person or by phone and file a proposed scheduling order within fourteen days of the date of this order.  That proposed scheduling must address whether the parties have mediated this case.  If they have not, the proposed scheduling order must propose a mediator and a deadline for mediation.

**IT IS SO ORDERED** this 1st day of February, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE